[Cite as *State v. Billeg*, 2013-Ohio-219.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
WYANDOT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 16-12-03

     v.

NEIL E. BILLEG,                    O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Trial Court No. 11-CR-0028

Judgment Affirmed

Date of Decision: January 28, 2013

APPEARANCES:

     *Scott B. Johnson* for Appellant

     *Jonathan K. Miller* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Neil Billeg, appeals the judgment of the Court of Common Pleas of Wyandot County sentencing him to three consecutive prison terms for his conviction on three counts of gross sexual imposition. On appeal, Billeg argues that the trial court erred by failing to appropriately consider the recidivism factors contained in R.C. 2929.12 and by imposing consecutive sentences. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On April 20, 2011, the Grand Jury of Wyandot County indicted Billeg on the following: (1) Counts I and II – rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree; (2) Counts III, IV, V, VI, and VII - gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree; (3) Count VIII - pandering sex oriented matter with a minor in violation of R.C. 2907.322(A)(1), a felony of the second degree; and (4) Count IX - pandering sex oriented matter with a minor in violation of R.C. 2907.322(A)(5), a felony of the fourth degree. For the purposes of this appeal, it is relevant that Counts III and IV were alleged to have occurred in 1994 and 1995, respectively, while Count VII was alleged to have occurred in 1998.

{¶3} The indictment arose from Billeg's various actions of sexual impropriety against the victim, A.H. The impropriety occurred during the mid-1990s while A.H. was between eight and 12 years old. During the course of the

abuse, Billeg was either the live-in boyfriend or husband of A.H.'s mother. Billeg engaged in the impropriety when A.H.'s mother was either asleep or not in the house.

{¶4} Billeg's activities were not discovered until April 2011. In early April 2011, one of Billeg's co-workers found a picture in their workplace's bathroom. The picture depicted a sex act between a male and a female, but the faces of the participants were covered with cut-outs of Billeg's face and A.H.'s face from when she was around nine years old. The co-worker gave the picture to the Upper Sandusky Police Department, which started an investigation. Lieutenant Eric Parks interviewed A.H., now of majority age, and asked whether she recognized the picture of her face. Upon further questioning, A.H. suffered an emotional reaction and then described Billeg's years of sexual impropriety against her. A.H. described the abuse as an everyday occurrence and consisted of Billeg inappropriately touching her and performing oral sex on her. She also indicated that she performed oral sex on Billeg.

{¶5} Detective Tyler Howell interviewed Billeg regarding the picture.[1] Billeg told Detective Howell that he used the picture and others like it to sexually gratify himself both in his home and at his workplace. Billeg admitted to inappropriate sexual contact with A.H. from the time she was five years old to 16

---

[1]The interview occurred at the Upper Sandusky Police Station and was videotaped. The video of the interview was admitted as State's Exhibit No. 1 at the July 22, 2011 pre-trial hearing. We have reviewed the video as well as Detective Howell's testimony regarding the interview.

years old. His admission tended to downplay the frequency of his sexual improxpriety and he denied forcing A.H. to perform oral sex on him. Billeg tried to legitimize his actions by suggesting that he wanted to show A.H. more affection since her biological father was largely absent from her life.

{¶6} During the interview, Billeg consented to the search of his house and work locker. The searched produced hundreds of pornographic materials, including the following:

> (1)  44 pictures in which the face of A.H. from when she was around nine years old is superimposed over a nude female either posing or engaged in a sex act;

> (2)  29 pictures in which the faces of Billeg and A.H. from when she was around nine years old are superimposed over a male and a female engaging in sex acts;

> (3)  112 photographs depicting prepubescent females engaging in sex acts;

> (4)  Two pictures in which the high school photograph of Billeg's granddaughter is superimposed over the face of a nude female; and

> (5)  One computer-altered picture depicting an adult male raping a minor female.

{¶7} On April 20, 2011, after performing the searches, the Upper Sandusky police detained Billeg and placed him in the Wyandot County correctional facility. During his time at the facility, Investigator William Latham interviewed Billeg regarding his sexual impropriety with A.H. Billeg referred to his actions as "crime[s] of opportunity" and stated that his sexual urges towards children had

become compulsive.[2] Billeg also admitted that he had taken A.H.'s diary away from her during the time period of the abuse and disposed of it because he knew it contained references to his actions.

{¶8} Billeg originally entered pleas of not guilty and not guilty by reason of insanity.[3] On June 8, 2011, the State dismissed one count of rape and both counts of pandering sex oriented matter with a minor. After discovery and the filing of various pre-trial motions, Billeg changed his plea to guilty on the eve of trial. Billeg's change of plea was pursuant to a plea agreement which required him to plead guilty to gross sexual imposition as alleged in Counts III, IV, and VII. In exchange, the State dismissed the remaining rape and gross sexual imposition counts. The trial court accepted Billeg's guilty plea on January 11, 2012.

{¶9} The matter then proceeded to sentencing. On February 14, 2012, after both Billeg and the State filed their sentencing memoranda, the trial court conducted a sentencing hearing. Billeg introduced evidence that he was 71 years old at the time of the hearing and that he was in a general state of poor health. He also offered the testimony of two witnesses on his behalf. The first was Billeg's spiritual counselor during his time at the Wyandot County correctional facility

---

[2] The interview was audio recorded and admitted as State's Exhibit No. 4 at the July 22, 2011 pre-trial hearing. We have reviewed the recording as well as Investigator Latham's testimony regarding the interview.
[3] Billeg withdrew his plea of not guilty by reason of insanity on June 17, 2011.

after his arrest. The counselor testified that Billeg expressed his remorse regarding his sexual impropriety with A.H.

{¶10} The second was Billeg's youngest son and A.H.'s half-brother, T.B. Like the spiritual counselor, T.B. testified that Billeg expressed remorse to him for the abuse. T.B. also stated that he did not want to see Billeg go to prison. On cross-examination, the State elicited the following testimony from T.B.:

> Q:   [B]ased on your observation of [A.H.] and your conversations with her, is there any doubt in your mind that what she went through has caused her significant psychological harm?
>
> A:   No.  Feb. 14, 2012 Hearing Tr., p. 16.

{¶11} Billeg also introduced a letter from his wife, C.B., who was unable to attend the sentencing hearing. Although the letter is signed solely by C.B., she indicates that her letter "speak[s]" for both A.H. and T.B. Court's Exhibit No. 2, p. 1. C.B. indicated that A.H. was "absolutely amazing through this whole ordeal," was "very adamant that she ha[d] forgiven [Billeg]", and was opposed to a prison term for Billeg. *Id.* Indeed, C.B. represented that A.H. had a "hard enough time with [Billeg] being in jail" and was unable to "stand the thought of [Billeg] going to prison." *Id.* Further, C.B. wrote that A.H. "has trouble sleeping and also has panic attacks." *Id.*

{¶12} The State then offered several items of evidence. First, Lieutenant Parks testified as to his initial interview with A.H.:

> I met the family at their residence [and] advised them of a[n] improper photo which had been found at [Billeg's workplace]. Uhm, showed the face of the juvenile to the victim * * *. Uhm, she confirmed it was her around 8-years old, fourth, fifth grade. Uhm, I asked if she wanted to see the rest of the photo, advised that it was sexual in nature.
>
> At this time, she became quiet and started to well up and burst out in tears and had to go into another room, a bedroom, and I could hear her sobbing for several minutes. Uhm, it was like I had poked a beehive or something and brought up something from the past.
>
> * * * And after a while she had come back in. She was still sobbing and, you know, wiping her eyes, but she related some things she obviously held back for some time. February 14, 2012 Hearing Tr., p. 25-26.

Detective Howell testified regarding the searches of Billeg's home and work locker, including the discovery of pictures with the superimposed faces of one of Billeg's grandchildren. The State also introduced two pictures recovered from Billeg's home and work locker.

{¶13} The record indicates that the trial court also admitted A.H.'s victim impact statement during the sentencing hearing. The trial court stated that the statement should have been marked as "Court's Exhibit No. 2," but the only document transmitted to this court with such a designation is the letter from C.B. Consequently, due to apparent clerical error, we do not have the victim impact statement as part of our record.

{¶14} After the presentation of evidence and counsel's arguments, the trial court stated the following:

> The Court, having considered the information presented at this hearing and the record, and now being fully informed of the circumstances surrounding the charges, and finding no cause which would preclude pronouncement of sentence, finds after balancing the factors pertaining to the seriousness of the offenses and whether the defendant is likely to recidivate, that the offender is not amenable to community control and prison is consistent with the purposes and principals [sic] of sentencing. *Id*. at p. 39.

Specifically, the trial court noted that Billeg was A.H.'s stepfather and "used his relationship with her to facilitate the offense." *Id*. at p. 40. It also outlined the impact of the offenses, including A.H. experiencing a childhood that was "full of fear," which still harms her to this day in the form of flashbacks, hesitancy in trusting others, and apprehension that the same offenses will occur to her children. *Id*. at p. 41.

{¶15} The trial court then discussed its findings regarding Billeg's lack of remorsefulness for the offenses:

> [I]n defendant's court appearances and in viewing defendant's taped interviews with officers investigating the case, [the court] finds defendant showed no genuine remorse for what he did. He minimized his conduct and attempted to deflect blame for what he did back on his 8 to 12-year old victim. If truly sorry the defendant would not have recreated illegal events and more in pictures, pictures possessed until his arrest.

> Defendant perpetrated his offense against the victim over a number of years, years he could have stopped, could have sought help, all rejected in his own interests and his own decision to re-offend. This shows an attitude of lawlessness. *Id*. at p. 41-42.

{¶16} Before pronouncing sentence, the trial court provided the following summary of its considerations:

> The Court has considered all the factors to indicate the defendant's crimes were more or less serious, and all the factors relating to whether defendant is more or less likely to recidivate, and finds those factors show the crimes were more serious and that the defendant's lack of genuine remorse and his continued possession of disgusting pictures, pictures of naked children, enjoying pictures of children being raped, give the Court great concern that defendant is a threat to public safety and a punishment commensurate with the seriousness of the offense is necessary. *Id*. at p. 42.

Based on these factors, the trial court handed down a basic prison sentence of eighteen months for Counts III and IV and four years for Count VII.

{¶17} Finally, the trial court ordered that the three sentences run consecutively, for a total prison term of seven years. The trial court stated the following regarding its decision to order consecutive sentences:

> [Consecutive sentences are] necessary to fulfill the purposes and principals (sic) of sentencing. Consecutive terms are necessary to punish the offender who continues to possess many items involving children portrayed in a sexual manner.
>
> Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public. The harm to the victim that was caused was so great or unusual that no single prison term can adequately reflect the seriousness of offender's conduct. Here the defendant engaged in a course of conduct covering a number of years. And, the harm that was imposed was stealing a childhood and that's pretty significant harm. *Id*. at p. 44.

The trial court journalized the above language in its February 29, 2012 judgment entry of sentencing.

**{¶18}** Billeg filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT'S SENTENCE IS CONTRARY TO LAW IN THAT IT FAILED TO APPLY THE FACTORS FOR RECIDIVISM MANDATED BY OHIO REVISED CODE § 2929.12.**

*Assignment of Error No. II*

**THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING CONSECUTIVE SENTENCES HEREIN.**

*Assignment of Error No. I*

**{¶19}** In his first assignment of error, Billeg contends that the trial court improperly weighed the seriousness and recidivism factors outlined in R.C. 2929.12 . We disagree.

*Standard of Review*

**{¶20}** A reviewing court must conduct a meaningful review of the trial court's imposed sentence. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8. Such review allows the Court to "modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the

sentence is otherwise contrary to law." *Id.*[4] Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶ 16.

*Sentencing Factors*

{¶21} R.C. Chapter 2929 governs sentencing. R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender." R.C. 2929.11(A). In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* Meanwhile, R.C. 2929.11(B) states that felony sentences must be both "commensurate with and not demeaning to the seriousness

---

[4] We note that the Supreme Court of Ohio's decision in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, establishes a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this court's precedential clear and convincing evidence standard adopted by the three dissenting justices in *Kalish*, we note that the outcome of our decision here would be the same under the plurality's two-part test.

of the offender's conduct and its impact upon the victim" and consistent with sentences imposed in similar cases.

{¶22} In accordance with these principles, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A). However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade*, 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶ 8. For the purposes of this appeal, the following provisions of R.C. 2929.12(B), (D), and (E) are relevant:

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
>
> * * *
>
> (6) The offender's relationship with the victim facilitated the offense.
>
> * * *
>
> (D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

\* \* \*

(5)   The offender shows no genuine remorse for the offense.

(E)   The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1)   Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2)   Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3)   Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

(4)   The offense was committed under circumstances not likely to recur.

(5)   The offender shows genuine remorse for the offense.

**{¶23}** Here, the trial court twice referred to its consideration of seriousness and recidivism factors in its judgment entry of sentencing.  (Docket No. 97, p. 3, 5).  Although the judgment entry does not refer explicitly to R.C. 2929.12, it does cite to R.C. 2929.11 and state that the trial court's sentence is based on "factors pertaining to the seriousness of the offenses and whether [Billeg] is likely to recidivate."  *Id.* at 3.  As a result, the record plainly reveals that the trial court considered the necessary statutory factors and did not engage in standardless sentencing.  *See State v. Johnson*, 9th Dist. No. 10CA0029-M, 2011-Ohio-1532, ¶

7 (finding that the trial court appropriately considered R.C. 2929.12's factors despite its failure to mention the statute in its judgment entry).

{¶24} In performing its review of the statutory factors, the trial court found that Billeg's offenses were more serious than other similar crimes. A review of the record supports such a finding. As recognized by the trial court, three of the seriousness factors under R.C. 2929.12(B) apply to Billeg's crimes. First, R.C. 2929.12(B)(1) applies because A.H. was merely eight to 12 years old when she endured the abuse that Billeg admitted to in his guilty plea. Her young age magnified her emotional and mental injuries and robbed her of childhood innocence. Second, R.C. 2929.12(B)(2) is pertinent since A.H.'s continued panic attacks and sleeping problems suggest that she suffers from serious emotional and mental harm. A.H.'s victim impact statement also led the trial court to illustrate the awful effect of Billeg's abuse on A.H. and we have found no evidence in the record to contradict the trial court's finding in this regard. Third, R.C. 2929.12(B)(6) is satisfied because Billeg's status as the residential stepparent of A.H. allowed him to commit his "crimes of opportunity" whenever his wife, A.H.'s mother, was not present. Based on this evidence, Billeg's attempt to downplay the severity of A.H.'s mental injuries on appeal is unavailing.

{¶25} The trial court also found that Billeg was more likely than not to recidivate, primarily on the basis of its conclusion that Billeg is not genuinely

remorseful for his crimes. Again, the record supports the trial court's finding. A review of the taped interviews with Billeg reveals a person who has a nonchalant attitude about his sexual impropriety with A.H. Even more importantly, Billeg's continued possession of pornographic materials with the picture of A.H.'s face as a child superimposed on female figures demonstrates that Billeg wishes to relive his actions, not make amends for them. We also note that Billeg possessed pornographic materials that had the picture of his granddaughter's high school picture superimposed over nude females and a picture depicting the rape of a child. The possession of these materials further demonstrates the threat that Billeg poses to the community and the likelihood of his recidivism. Although other factors contained in R.C. 2929.12(E) suggest that Billeg is less likely to recidivate, it was permissible for the trial court to afford those factors less weight than the above evidence.

{¶26} In light of the evidence supporting the trial court's conclusions that Billeg's offenses were serious and reflect a likelihood of recidivism, we find that there is not clear and convincing evidence to disturb the trial court's sentence.

{¶27} Accordingly, Billeg's first assignment of error is overruled.

*Assignment of Error No. II*

{¶28} In his second assignment of error, Billeg contends that the trial court erroneously handed down consecutive sentences. We disagree.

{¶29} We preliminarily note that the trial court sentenced Billeg on February 29, 2012, before the effective date of Senate Bill 337 ("S.B. 337"), which amended R.C. 2929.14's treatment of felony sentencing. Since Billeg's sentencing predates the enactment of S.B. 337, the new provisions have no applicability to this matter and the former version of the statute controls.

{¶30} At the time of Billeg's sentencing, former R.C. 2929.14(C) governed the imposition of consecutive prison terms. Former R.C. 2929.14(C)(4) provided, in pertinent part, as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court finds any of the following:
>
> * * *
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of the officer's conduct.

{¶31} Here, although the trial court was not required to give reasons for its order of consecutive sentences, the trial still stated them in its judgment entry of sentencing:

> The Court further Orders that these sentences be served consecutive[ly], one after the other, [since] it [is] necessary to fulfill the purposes and principles of sentencing. Consecutive terms are necessary to punish the offender as [Billeg] continues to possess items involving children portrayed in a sexual manner. Consecutive sentences are not disproportionate to the seriousness of [Billeg's] conduct and the danger [Billeg] poses to the public. The harm to the victim was so great or unusual that no single prison term can adequately reflect the seriousness of [Billeg's] conduct. Here [Billeg] engaged in a course of conduct covering a number of years and the harm that was caused was stealing a childhood, and that is pretty significant. (Docket No. 97, p 6).

The record supports these findings. Billeg pleaded guilty to abusing A.H. in 1994, 1995, and 1998 and he admitted to engaging in sexual impropriety with A.H. from the time she was 5 years old until she turned 16. Over this long period of abuse, Billeg caused severe emotional and mental harm, which is discussed above. In light of this, there is not clear and convincing evidence that the trial court's order of consecutive sentences is improper.

{¶32} Accordingly, Billeg's second assignment of error is overruled.

{¶33} Having found no error prejudicial in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**PRESTON, P.J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Concurring Separately.**

**{¶34}** I concur fully with the judgment of the majority, however write separately to emphasize the appropriate standards of review. The standard of review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellants must meet a clearly and convincingly contrary to law standard of review when reviewing a sentence.[5] For example, if the sentencing court imposed consecutive sentences, the standard of review would be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon alleged improper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C 2929.12.[6]

**{¶35}** In his assignment of error, Billeg alleges that the trial court erred by failing to properly apply the felony sentencing guidelines set forth in R.C. 2929.11 and 2929.12. Billeg's appeal of his felony sentence challenges the application of the factors in R.C. 2929.12. Pursuant to the statute, the proper question is whether the trial court abused its discretion in applying the factors. As set forth by the majority, there was ample evidence to support the findings of the trial court. I

---

[5] Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.

[6] Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.

therefore agree that the trial court did not abuse its discretion in finding Billeg likely to recidivate and that the offense was serious. For this reason, I concur in the judgment of the majority.